# **EXHIBIT H**



THIRD JUDICIAL DISTRICT
DISTRICT COURT, SHAWNEE COUNTY
CIVIL DEPARTMENT

MARVIN L. BROWN, JOANN BROWN, and )
CHARLES WILLIAM STRICKER III, on )
behalf of themselves and all others similarly )
situated, )
)
        Plaintiffs, )  Case No. 2016-CV-000550
) Division No. 6
v. )
)
KRIS KOBACH, Kansas Secretary of State, in )
his official capacity, )
)
        Defendant. )
)

## ORDER GRANTING TEMPORARY INJUNCTION
### K.S.A. 60-905

On the 29th day of July, 2016, Plaintiffs' Motion for Temporary Restraining Order and Temporary Injunction came before the Court. Plaintiffs appeared by and through their counsel, Sophia Lin Lakin, Dale Ho, Robert V. Eye, and Mark Johnson. Defendant appeared in person and by and through counsel Kris Kobach and Garrett Roe.

Having reviewed the pleadings, heard arguments of counsel, and having been duly advised on the premises, the Court Orders, for the reasons stated from the bench at the hearing on the Motion and as outlined herein, that Plaintiffs' Motion is granted.

This Order is effective as of the 29th day of July, 2016.

### Background

It is beyond dispute that voting is of the most fundamental significance under our Constitution. There is no right that is more precious to a free country than having a voice in the election of those who make the laws under which, as good citizens, we must all live.

This case is presented to the Court as a result of the Defendant's adoption and ultimately enactment of Kan. Admin. Regs. ("K.A.R.") § 7-23-16. The regulation was proposed and adopted on July 8, 2016 by Defendant, Kansas Secretary of State Kris Kobach. Notice was given late on July 11, 2016, and the State's Rules and Regulation Board met at 8 AM on July 12, 2016, and approved the regulation. Early voting began the next day on July 13, 2016. The Plaintiffs filed this action for declaratory and injunctive relief on July 19, 2016, at 10:07 AM. The Court's administrative assistant, on July 20th, called all the parties and attempted to set a hearing as rapidly as possible. The hearing was delayed until July 29, 2016, because the Defendant Secretary Kobach was unavailable prior to this date and needed time to respond to the petition that had been filed by the Plaintiffs.

### **Findings of Fact**

The Plaintiffs in this case are Marvin L. Brown, JoAnn Brown, and Charles William Stricker. Plaintiff Marvin Brown is a ninety-year-old Army Air Corps veteran who lives in Johnson County, Kansas. On January 28, 2016, he registered to vote in Kansas by filling out the National Mail Registration Form ("Federal Form"), and attesting under the penalty of perjury to his U.S. citizenship and eligibility to vote. Mr. Brown did not submit documentary proof of citizenship ("DPOC"). Plaintiff JoAnn Brown, who is married to Marvin Brown, followed the same process for registering to vote on that same date in Johnson County. She also did not submit DPOC. Due to their failure to submit DPOC, Kansas Director of Elections, Brian Caskey, testified that the Browns are eligible to vote for federal offices, but not for state or local offices.

Plaintiff Charles Stricker is a resident of Sedgwick County. He applied for a driver's license in October of 2014 and while doing so, registered to vote in Kansas, attesting under the penalty of perjury to his U.S. citizenship and eligibility to vote. He did not submit DPOC. On July13, 2016, Mr. Stricker received notice from the Sedgwick County election office informing

2

him he was eligible to vote for federal offices only—and thus ineligible to vote for state and local offices—and not considered a registered voter.

## Conclusions of Law

In order for this Court to grant Plaintiffs' motion for a temporary injunction, Plaintiffs must satisfy five factors: "(1) a substantial likelihood of eventually prevailing on the merits; (2) a reasonable probability of suffering irreparable future injury; (3) the lack of obtaining an adequate remedy at law; (4) the threat of suffering injury outweighs whatever damage the proposed injunction may cause the opposing part; (5) and the impact of issuing the injunction will not be adverse to the public interest." *Downtown Bar & Grill, LLC v. State*, 294 Kan. 188, 191; 223 P.3d 709 (2012).

### I.   Likelihood of Success on the Merits

Turning to the first factor, this Court finds that Plaintiffs have established a substantial likelihood of eventually prevailing on the merits. Defendant Secretary of State operates and issued a regulation that formalizes a system of dual registration that is beyond his legal authority; and while the Secretary could have asked the legislature to provide that authority, he did not. In coming to this conclusion, the Court adopts Judge Theis' legal findings in *Belenky v. Kobach*, No. 2013CV1331 (Shawnee Cty. Dist. Ct.),[1] and those findings of Plaintiffs in their memorandum in support of their motion that support this Court's findings that the dual registration system is prohibited. This conclusion is also consistent with Judge Julie Robinson's findings in *Fish v. Kobach*,--- F. Supp. 3d ----, No. 16-2105-JAR-JPO, 2016 WL 2866195 (D. Kan. May 17, 2016).

---

[1] While Judge Theis's opinion in *Belenky v. Kobach* and Judge Julie Robinson's opinion in *Fish v. Kobach* are not binding on this Court, the Court nevertheless finds them persuasive.

3

There is a heightened scrutiny given to rights under Article 4, Section 1 of the Kansas Constitution that demands that the laws or actions encumbering the privilege of voting be measured by a compelling reason. Based upon the authorities that this Court has reviewed and now relies upon, this Court concludes that the Kansas Secretary of State has no legal authority to adopt a regulatory scheme that establishes a dual registration or two-tiered voting system in Kansas. Such a scheme would exclude Plaintiffs and similarly situated prospective voters from having their votes counted for state and local offices while counting their votes for federal offices only. K.A.R. § 7-23-16 was not authorized by any legislative enactment and the Court finds that there is a substantial likelihood of Plaintiffs prevailing on their claim that the dual registration system that has been operated and formalized by this regulation is prohibited.

## II.   Irreparable Injury

The next factor to be considered is whether there is a reasonable probability that Plaintiffs, and those similarly situated, will suffer an irreparable future injury. Early voting began on July 13, 2016. There is nothing this Court can do for those voters similarly situated to Plaintiffs who did not vote for state and local offices in reliance on the Secretary of State's instructions that their votes for those offices would not be counted. However, those individuals that vote on August 2nd or who cast votes for state and local offices are within this Court's ability to help, and if they are not allowed to vote for local and state offices (or if any votes they did cast for state and local offices are not counted) they will never be able to re-cast their votes. This was confirmed by the testimony of Director of Elections, Brian Caskey. Further, the overwhelming majority of the approximately 17,500 people adversely impacted by K.A.R. § 7-23-16 and the dual registration system are U.S. citizens who will lose their constitutionally-mandated right to vote. The Secretary of State candidly told this Court during the hearing that he

4

estimates that of the 17,500 people adversely affected by K.A.R. § 7-23-16 and the dual system that there could be as many as 25-100 people statewide who should not be registered because they are not U.S. citizens. Assuming this is correct, and even assuming further that those 25-100 people actually vote, this Court does not find that their status as unqualified for registration justifies disenfranchising as many as 17,500 people who should be able to vote simply but for the failure to meet the DPOC requirement. Losing one's vote is an irreparable harm in this Court's opinion that is much greater than any of the possible problems stemming from this decision that the Secretary of State might encounter in administering the primary election.

### III.   Adequate Remedy at Law

With respect to the third factor, the Court finds and concludes that Plaintiffs do not have an adequate remedy at law and that an equitable remedy by injunctive relief is applicable. In this case the only available remedy is equitable in nature. The Court recognizes that private citizens have limited recourse against governmental action. The equitable remedies afforded by K.S.A. § 60-901, *et seq.* are pertinent here. The remedies under a declaratory judgment action are unavailing to Plaintiffs because such would not act to prohibit enforcement of K.A.R. § 7-23-16 or the dual system. Only an equitable remedy is adequate to address the harm that will be caused by enforcement of K.A,R. § 7-23-16 and operation of the dual system.

### IV.   Balance of Hardships

The fourth factor for the Court's consideration is whether the threat of Plaintiffs' injury outweighs whatever damage the proposed injunction may cause the Secretary of State. The Court recognizes that the Secretary of State will suffer some administrative burdens; but those difficulties do not outweigh the loss of the right of Plaintiffs and others similarly situated to cast and have counted their votes for local and state offices. In fact, because the effect of this

decision is to treat Plaintiffs and those similarly situated in the same way as all other voters, *i.e.*, allow them to vote for all offices and have their votes for all offices counted, the Court's ruling actually simplifies the voting process by eliminating additional steps that the dual registration system and K.A.R. § 7-23-16 require. In addition, any administrative burdens stemming from this decision are a problem caused by the Secretary of State's late adoption of K.A.R. § 7-23-16 and operation of the dual registration system. The Court did not create and cannot solve these administrative problems caused by the Secretary of State's actions.

## V.   Public Interest

Turning to the final factor for the Court's consideration, the Court finds and concludes that the temporary injunction requested by Plaintiffs will not be adverse to the public interest. The Court agrees that the Secretary of State has an interest in preventing non-citizens from registering to vote. The Court also recognizes the legitimacy and importance of the State's interest in counting votes of eligible voters only; but those interests do not outweigh the risk that the public will suffer by losing those 17,500 votes of qualified voters as opposed to a possible 25 or 100 individuals that are not qualified to vote. The public interest is protected by allowing the votes of duly registered voters to be cast and counted for all offices. The dual registration system is inimical to the public interest because it is not based on statutory authority and it impairs the right to vote for all offices based on Plaintiffs' chosen method of registration.

For the reasons set forth above, this Court finds and concludes that all five factors necessary for a temporary injunction are present, and rule in favor of Plaintiffs. Additionally, because of the short time the Court has had to outline these five factors, the Court hereby adopts Judge Theis' legal findings in *Belenky v. Kobach* and those findings of Plaintiffs in their

memorandum in support of their motion that support this Court's findings that the dual registration is prohibited.

### Order

The Court hereby grants Plaintiffs' motion for a temporary injunction and orders that all provisional ballots that were made so or "tagged" as a result of K.A.R. § 7-23-16 or the dual registration system be counted for federal, state and local elections. Local elections officers will be immediately instructed by the Secretary of State to let all 17,500 or however many voters that are adversely impacted by the dual registration system and K.A.R. § 7-23-16 vote for all offices on the ballot and to count all the votes cast on those ballots.[2]

IT IS SO ORDERED.

Dated this 9th of August, 2016

Larry D. Hendricks
District Court Judge

---

[2] The Court having issued a temporary injunction need not rule on Plaintiffs' interim alternative request for a temporary restraining order.

7