IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA MUSLIM VOTER PROJECT and ASIAN-AMERICANS ADVANCING JUSTICE-ATLANTA, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIAN KEMP, in his official capacity as the Secretary of State of Georgia; and GWINNETT COUNTY BOARD OF VOTER REGISTRATION AND ELECTIONS, on behalf of itself and similarly situated boards of registrars in all 159 counties in Georgia, <br><br> Defendants. | Civil Action No.: 1:18-cv-04789-LMM |

## PLAINTIFFS' RESPONSE TO THE COURT'S OCTOBER 24, 2018 PROPOSED TEMPORARY RESTRAINING ORDER

Plaintiffs respectfully present four suggested changes to a portion of Paragraph 1 of the October 24, 2018 proposed temporary restraining order. Below are the recommendations and the bases thereof, followed by suggested redlined changes to the proposed order.

*First*, Plaintiffs request that the order clarify that the "good faith" process for confirming the identity of the absentee voter be made available for voters who cannot appear in-person. As this Court has recognized, many absentee electors vote absentee precisely because they cannot be present in-person, whether because of age, disability, lack of transportation, or because they are out of town. Such absentee voters also include uniformed services and overseas voters, who face even greater barriers to appearing in-person. In addition, many voters of lesser economic means cannot easily appear on short notice at a formal hearing in the county seat during regular business hours on a weekday. Thus, as the court recognized in *Saucedo v. Gardner*, Civil No. 17-cv-183-LM, 2018 WL 3862704, at *12 (D.N.H. Aug. 14, 2018), a "phone call or similar measure" could be adequate. While it is not a "perfect solution," since "[s]ome may not be reachable by phone, and others may not have access to email," *id.*, it would at least open up the process to those who cannot appear in-person. In addition, as suggested by this Court

1

during oral argument, voters should be permitted to send, or rely upon, designated representatives or attorneys to appear on their behalf if that is an option for them.

*Second*, Plaintiffs are concerned that the deadline set for these procedures to take place—three days after Election Day—will be unworkable for the many absentee voters who receive rejection notices well after Election Day, when it will be too late to confirm their identity. Under Georgia law, all absentee ballots received by elections officials up until the closing of the polls on Election Day must be processed. O.C.G.A. § 21-2-386(a)(1)(F). Thus, absentee voters whose ballots are received at the end of Election Day and are rejected due to a signature mismatch may not receive their mailed rejection notices until up to three days after Election Day. Under the terms of the proposed order, that will be too late for them for to confirm their identity by the three-day deadline.

For this reason, Plaintiffs originally proposed that this deadline be extended to three days after Election Day, *or* three days after they receive their rejection notice, *whichever is later*, to account for this possibility. The Court may have had concerns that the process would be unduly prolonged, or that it might involve too much rewriting of a statute. Plaintiffs thus recommend that these procedures be allowed to occur up to *six* days after Election Day. This is modelled after O.C.G.A. § 21-2-230(g), which this Court recognizes as the basis for Plaintiffs' proposed

relief. Under that procedure, challenge hearings may occur "prior to the certification of the consolidated returns of the election by the election superintendent," *id.*, and O.C.G.A. § 21-2-493(k) provides that such certification must occur "not later than 5:00 P.M. on the Monday following the date on which such election was held," which is six days after Election Day. Thus, the statute already contemplate a scenario whereby absentee ballots are not resolved until six days after Election Day.

    A six-day deadline would help ensure that all absentee voters will receive pre-rejection notices with enough time to confirm their identity. For example, if a voter's absentee ballot arrives at the close of polls on Election Day, and a pre-rejection notice is immediately mailed out the day after Election Day, then that voter will receive the pre-rejection notice 2-4 days after Election Day, and they will have up to 6 days after Election Day to confirm their identity. In addition, a six-day deadline will help provide extra breathing room for elections officials.

    ***Third***, to better ensure that absentee voters do not receive their pre-rejection notices too late for them to cure, Plaintiffs had previously requested that this Court require pre-rejection notices to be sent out within one day. Plaintiffs believe that, at a minimum, pre-rejection notices *for absentee ballots received on Election Day*

must be sent no later than the day after Election Day to ensure that absentee voters who receive pre-rejection notices by mail still have time to confirm their identity.

Nonetheless, Plaintiffs understand the reasons why this Court was disinclined to set a one-day deadline. Should this Court continue to be disinclined towards imposing a one-day deadline, including for absentee voters whose ballots arrive on Election Day, Plaintiffs respectfully propose that elections officials be required to *electronically transmit* rejection notices *if* they have an email address on file. (Many uniformed services and overseas voters, for instance, will have an email on file, and elections officials are already required to use email for those voters who elect that option. *See* O.C.G.A. § 21-2-384(e).) As Chris Harvey, the Elections Director, averred, "Many election directors will . . . . call and/or email if the voter provides that information so that they receive immediate notification." Dkt. No. 24-1 (Harvey Decl.) ¶ 9. This will ensure speedier delivery and greater breathing room for elections officials to conduct any proceedings on the back end.

*Fourth*, Plaintiffs note that the Court's proposed procedure concerning the "mark[ing]" of certain absentee ballots "as provisional" dovetails well with an existing Georgia regulation, Ga. Comp. R. & Regs. 183-1-14-.03(2) ("Provisional Absentee Ballots"), which provides that certain absentee ballots (those cast by first-time voters who have not yet provided the identification required for first-time

registrants) "shall be treated as [] provisional ballot[s] and shall be held separate and apart from the other absentee ballots." Though not absolutely necessary, it might be helpful to reference that regulation and to slightly conform the wording of the order to that regulatory language.

In light of the above suggestions, Plaintiffs propose the following redline changes to Paragraph 1 of the proposed order:

1) All county elections officials responsible for processing absentee ballots shall not reject any absentee ballots due to an alleged signature mismatch. Instead, for all ballots where a signature mismatch is perceived, the county elections official shall **treat this absentee ballot as a provisional ballot which shall be held separate and apart from the other absentee ballots.** ~~mark this ballot as provisional.~~ *See* O.C.G.A. § 21-2-419**; Ga. Comp. R. & Regs. 183-1-14-.03(2)**. The county elections official shall then provide pre-rejection notice and an opportunity to resolve the alleged signature discrepancy to the absentee voter. This process shall be done in good faith and is limited to confirming the identity of the absentee voter. **This process shall include allowing the voter to send or rely upon designated representatives and shall be made available by phone or by electronic communication**. This process shall be done no later than ~~three~~ **six** days

5

following the election. **All pre-rejection notices must be issued by mail, or by electronic transmission if possible, no later than the day after the election.** The absentee voter shall have the right to appeal any absentee ballot rejection following the outcome of the aforementioned process, as designated in O.C.G.A. § 21-2-229(e).

Plaintiffs thank the Court for its careful consideration.

                                          Respectfully submitted,

this 24th of October, 2018         s/ Sean J. Young_____

                                          Sean J. Young (Ga. Bar No. 790399)
                                          AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION OF GEORGIA, INC.
                                          P.O. Box 77208
                                          Atlanta, GA 30357
                                          770-303-8111 (phone)
                                          770-303-0060 (fax)
                                          syoung@acluga.org

                                          Sophia Lin Lakin
                                          Dale E. Ho
                                          AMERICAN CIVIL LIBERTIES UNION
                                          125 Broad Street, 18th Floor
                                          New York, NY 10004
                                          212-519-7836 (phone)
                                          slakin@aclu.org
                                          dho@aclu.org

                                          Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

s/ Sean J. Young_____

Sean J. Young (Ga. Bar No. 790399)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
770-303-8111 (phone)
770-303-0060 (fax)
syoung@acluga.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Counsel for Defendants have entered notices of appearance in this case, and will thus receive electronic notice of the filing.

Date: October 24, 2018

s/ Sean J. Young_____

Sean J. Young (Ga. Bar No. 790399)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
770-303-8111 (phone)
770-303-0060 (fax)
syoung@acluga.org